# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **9th day of May, 2025** are as follows:

**PER CURIAM:**

2024-C-00865     *THEOPHILUS ROLAND, JR. VS. LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS (Parish of Rapides)*

AFFIRMED. SEE PER CURIAM.

Hughes, J., dissents and assigns reasons.
Crain, J., concurs for the reasons assigned by Justice Cole.
Griffin, J., dissents.
Cole, J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2024-C-00865

THEOPHILUS ROLAND, JR.

VS.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

On Writ of Certiorari to the Court of Appeal, Third Circuit, Parish of Rapides

PER CURIAM

We granted certiorari in this case to determine if the court of appeal erred in reversing the judgment of the district court. For the reasons that follow, we find the court of appeal applied an incorrect standard of review but conclude it reached the correct result in reversing the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Theophilus Roland, Jr., was operating a Polaris Slingshot three-wheel vehicle when he was pulled over by Louisiana State Trooper Trevor Blanchard. According to Trooper Blanchard, plaintiff's vehicle had strips of LED lights on its front and sides in violation of La. R.S. 32:327.[1] Trooper Blanchard detected an odor of alcohol on plaintiff's breath, and plaintiff consented to a field sobriety test. After a poor performance on the test, Trooper Blanchard arrested plaintiff for driving while intoxicated and a lamp violation.

---

[1] The relevant provision of La. R.S. 32:327 provides:

> A. Any lighted lamp or illuminating device upon a motor vehicle, other than head lamps, spotlamps, auxiliary lamps, flashing turn signals, emergency vehicle warning lamps and school bus warning lamps, which project a beam of light of an intensity greater than 300 candlepower shall be so directed that no part of the high intensity portion of the beam will strike the level of the roadway on which the vehicle stands at a distance of seventy-five feet from the vehicle.

After his arrest, plaintiff refused to submit to a chemical test for intoxication. As a result, the Department of Public Safety and Corrections, Office of Motor Vehicles ("OMV") disqualified plaintiff's commercial driver's license ("CDL")[2] for one year in accordance with La. R.S. 32:414.2(A)(4)(d)[3] and 49 C.F.R. §383.51.[4] The District Attorney for Rapides Parish later declined to prosecute the case.

After the criminal charges were declined, plaintiff requested an administrative hearing to challenge the disqualification of his CDL in accordance with La. R.S. 32:668(A).[5] Following the administrative hearing, OMV confirmed the suspension.

Plaintiff then filed the instant petition for judicial review naming OMV as defendant. The matter proceeded to a trial de novo before the district court.

At the trial, Trooper Blanchard testified that he conducted a traffic stop after observing plaintiff's three-wheel vehicle "had lights emitting from all sides of it and in the wheels and rims." He attributed the stop to a violation of La. R.S. 32:327, Special Restriction on Lamps. Upon stopping plaintiff's vehicle, Trooper Blanchard detected the strong odor of alcohol on plaintiff's breath. Plaintiff admitted to Trooper Blanchard that he had one Long Island iced tea at dinner about an hour prior. After conducting a standardized field sobriety test, wherein Trooper Blanchard

---

[2] OMV also suspended plaintiff's personal driver's license; however, the instant proceeding is limited to his commercial driver's license.

[3] La. R.S. 32:414.2(A)(4) states:

> Except as provided in Subparagraph (2)(a) of this Subsection for lifetime disqualification, and in Paragraph (3) of this Subsection for three years disqualification for offenses committed while transporting hazardous materials, any person shall be disqualified from operating a commercial motor vehicle for a minimum period of one year for:
>
> ***
>
> (d) A first offense of refusal to submit to an alcohol concentration or drug test, while operating a commercial motor vehicle or noncommercial motor vehicle by a commercial driver's license holder.

[4] 49 C.F.R. §383.51 mandates a one-year suspension for a first-offense refusal to submit to an alcohol concentration or drug test in violation of the state's implied consent laws.

[5] La. R.S. 32:668(A) requires that the Department of Public Safety and Corrections to give notice and an opportunity for a hearing to those with a suspended license.

observed six signs of intoxication over the legal limit, he arrested plaintiff. After being advised of his rights concerning chemical testing for intoxication, plaintiff refused the test.

During cross-examination, Trooper Blanchard admitted the applicable statute did not prohibit having lights on the side of the vehicle. However, he explained that he stopped plaintiff because it appeared that white LED lights were illuminating all around the vehicle, stating: "[l]ights on all around the vehicle shouldn't be able to be seen for more than 300 feet and also strike level surface." He admitted there was no way to measure if the lights were greater than 300 candle power, but he believed them to be.

Plaintiff testified that he installed additional lighting to the front of his vehicle for safety reasons. He also admitted to being previously pulled over for the same lighting violation, although these charges were later dismissed.

At the conclusion of trial, the district court rendered judgment in favor of plaintiff. In its written reasons, the trial court found the evidence concerning the refusal of chemical testing was illegally obtained after an invalid traffic stop; therefore, the court found it was inadmissible.

OMV appealed. The court of appeal reversed. *Roland v. Louisiana Dep't of Pub. Safety & Corr.*, 2024-45 (La. App. 3 Cir. 6/5/24) (unpublished).

In its opinion, the court of appeal acknowledged the district court's findings of fact and credibility determinations were subject to great deference. However, it pointed out the interpretation and application of statutes are to be considered de novo without deference to the district court's findings. The court then conducted a de novo review of the record.

After reviewing the testimony of Trooper Blanchard, the court of appeal found that he had reasonable cause to stop plaintiff for a traffic violation under La. R.S. 32:327 based on his objective observation of the brightness and illumination of

3

plaintiff's lights. Having found reasonable suspicion for the stop, the court of appeal held that plaintiff was subject to automatic disqualification of his CDL privileges for one year under La. R.S. 32:414.2(A)(4)(d) for refusing to submit to a chemical alcohol concentration test. In accordance with the statutory mandate, the court of appeal reversed the trial court's judgment that reinstated plaintiff's CDL driving privileges.

Upon plaintiff's application, we granted certiorari to consider the correctness of this decision. *Roland v. Louisiana Dep't of Pub. Safety & Corr*., 2024-0865 (La. 11/27/24), 396 So. 3d 447.

## DISCUSSION

In *Stobart v. State through Dep't of Transp. & Dev*., 617 So. 2d 880, 882–83 (La. 1993), we discussed the standard of review for factual findings:

> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally*, *Cosse v. Allen–Bradley Co.*, 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). **Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.** *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844–45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Housley v. Cerise*, 579 So.2d 973 (La.1991)

4

(quoting *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990)). [emphasis added].

However, in *Louisiana Mun. Ass'n v. State*, 2004-0227 (La. 1/19/05), 893 So. 2d 809, 836, we recognized that questions of law are addressed on a de novo basis:

> Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. *Cleco Evangeline v. Louisiana Tax Com'n*, 2001–2162 p. 3 (La.4/3/02), 813 So.2d 351, 353. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." *Id.* [footnote omitted].

It appears the court of appeal determined the district court made an error of law concerning the interpretation of La. R.S. 32:414.2. As a result, the court declined to give deference to the district court's factual findings and instead performed a de novo review of the record.

We fail to see any legal error on the part of the district court regarding the legal interpretation of La. R.S. 32:414.2, which pertains to the automatic disqualification of CDL privileges for one year for refusing to submit to a chemical alcohol concentration test. To the contrary, the district court's reasons show it did not reach the applicability of La. R.S. 32:414.2 because it excluded any evidence of plaintiff's intoxication based on a finding Trooper Blanchard did not have reasonable cause to make the stop.

To the extent that the applicability of La. R.S. 32:414.2 turns on whether there was a valid traffic stop, we find the determination is a mixed question of fact and law. This court has recognized "mixed questions of fact and law should be accorded great deference by appellate courts under the manifest error standard of review." *O'Hern v. Dep't of Police*, 2013-1416 (La. 11/8/13), 131 So. 3d 29, 33. Having found the court of appeal applied an incorrect standard of review, we will now consider the district court's finding under the correct manifest error standard.

The district court made a factual finding that "[n]either Trooper Blanchard's testimony nor the evidence presented by the State sufficiently demonstrated that Trooper Blanchard reasonably suspected Plaintiff of committing, having committed, or about to commit an offense at the time of the stop." We must determine if this finding is clearly wrong based on the evidence in the record.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred or is about to occur, before stopping the vehicle. *State v. Hunt*, 2009-1589 (La. 12/1/09), 25 So. 3d 746, 753. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation. *Id.*

Trooper Blanchard testified he stopped plaintiff's vehicle based on a violation of La. R.S. 32:327, which provides that lamps on a vehicle "which project a beam of light of an intensity greater than 300 candlepower shall be so directed that no part of the high intensity portion of the beam will strike the level of the roadway on which the vehicle stands at a distance of seventy-five feet from the vehicle." Trooper Blanchard explained he stopped plaintiff's vehicle because the vehicle "had lights emitting from all sides of it and in the wheels and rims." While Trooper Blanchard admitted he could not measure the actual intensity of the lights, he consistently testified the lights were "very bright."

We find Trooper Blanchard's testimony clearly establishes that he had an objectively reasonable suspicion that some sort of illegal activity occurred at the time of the stop. Plaintiff did not present any contrary evidence which would call Trooper Blanchard's testimony into question, and the district court did not articulate any reasons why Trooper Blanchard's testimony was not credible. Therefore, we believe the trial court was clearly wrong in finding Trooper Blanchard did not have a reasonable basis for the traffic stop.

6

Because the traffic stop was reasonable, there is no ground to exclude evidence of the actions which occurred after the stop. It is undisputed that plaintiff is the holder of a CDL and refused to submit to an alcohol concentration test while operating a noncommercial motor vehicle. He was therefore subject to an automatic disqualification of his commercial driving privileges for one year under La. R.S. 32:414.2(A)(4)(d).

In summary, while the court of appeal applied an incorrect standard of review, it reached the correct result in reversing the judgment of the district court that reinstated plaintiff's commercial driving privileges. Accordingly, we affirm the judgment of the court of appeal.

## DECREE

For the reasons assigned, the judgment of the court of appeal is affirmed to the extent it reverses the judgment of the district court that reinstated the commercial driving privileges of Theophilus Roland, Jr.

**SUPREME COURT OF LOUISIANA**

**No. 2024-C-00865**

**THEOPHILUS ROLAND, JR.**

**VS.**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**

On Writ of Certiorari to the Court of Appeal, Third Circuit, Parish of Rapides

**Hughes, J., dissents.**

I respectfully dissent and would reinstate the judgment of the trial court.

SUPREME COURT OF LOUISIANA

No. 2024-C-00865

THEOPHILUS ROLAND, JR.

VS.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

On Writ of Certiorari to the Court of Appeal, Third Circuit,
Parish of Rapides

**COLE, J., concurs and assigns reasons:**

Though I agree with the majority's result in affirming the court of appeal, in my view, the result here is dictated by a straightforward principle: the exclusionary rule does not apply to this civil driver's license revocation proceeding. In *Pullin v. Louisiana State Racing Comm'n*, 484 So. 2d 105, 106 (La. 1986), this Court explained:

> In *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court set forth a framework for deciding in what types of proceeding application of the exclusionary rule is appropriate. The appropriateness of extending the rule to a particular proceeding is to be determined by weighing the likely social benefits of excluding unlawfully seized evidence against the likely social costs. If the costs outweigh the benefits, then the court should not apply the rule.

*Id.* at 106.

The *Pullin* Court analyzed whether to exclude evidence collected during an illegal search conducted by the Louisiana State Police Racing Investigations Unit from a State Racing Commission regulatory proceeding. The Court determined that the exclusionary rule was not applicable in Racing Commission hearings, noting that the costs of applying the rule in Racing Commission hearings would outweigh the benefits. *Id.* at 108. More specifically, the Court explained that "Louisiana has a vital interest in maintaining the integrity of the horse racing industry . . . . Without close, constant regulation, there is a danger that corrupt, incompetent, dishonest and

unprincipled horse racing practices would spread. Therefore, the state's vital interest in maintaining the integrity of the horse racing industry would be jeopardized [by applying the exclusionary rule to its regulatory proceedings]." *Id.* at 108.

In my view, permitting the Office of Motor Vehicles to regulate the holders of commercial driver's licenses, thereby preventing dangerous drunk driving among the State's commercial truck drivers, certainly presents an interest at least as vital and compelling as regulation of the horse racing industry and outweighs any social costs of excluding unlawfully seized evidence. *See* La. Prac. DWI § 3:3 (July 2024) ("The legislative intent behind La. R.S. 32:414.2 is to hold commercial license vehicle operators to a higher standard."). *See also Butler v. Dep't of Pub. Safety & Corr.*, 609 So. 2d 790, 796 (La. 1992) (concluding that "a driver's license suspension is a remedial measure which attempts to protect society from the hazards posed by drunk drivers . . . ."). I would therefore find that the exclusionary rule does not apply in administrative hearings conducted to challenge the disqualification of a commercial driver's license in accordance with La. R.S. 32:414.2(A)(4)(d).[1] As a result, I concur in the majority opinion affirming the court of appeal's judgment which held that plaintiff was subject to automatic disqualification of his commercial driving privileges.

---

[1] The State is expressly required by federal regulation to disqualify a CDL holder for one year following a refusal to take an alcohol test as required by law. 49 C.F.R. 383.51 (Table 1). The state's interest in compliance with this federal mandate is an additional vital interest that would prevent the application of the exclusionary rule in this context.